Filed 10/10/13  In re J.S. CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| In re J.S., a Person Coming Under the Juvenile Court Law. | C070994 |
| THE PEOPLE,<br><br>Plaintiff and Respondent,<br><br>v.<br><br>J.S.,<br><br>Defendant and Appellant. | (Super. Ct. No. JV131788) |

Following a contested jurisdiction hearing, the Sacramento County Juvenile Court found that minor J.S., age 12, was described by Welfare and Institutions Code section 602 in that he committed attempted first degree burglary (Pen. Code, §§ 459, 460, subd. (a), 664—count one), second degree burglary (Pen. Code, §§ 459, 460, subd. (b)— counts two, three, six & eight), receiving stolen property (Pen. Code, § 496, subd. (a)— count four), destroying property (Pen. Code, § 594, subd. (b)(2)(A)—counts five & seven), vandalism (Pen. Code, § 594, subd. (b)(1)—count nine), negligent discharge of a

1

firearm (Pen. Code, § 246.3—count ten), and possession by a minor of a concealable firearm (former Pen. Code, § 12101, subd. (a)(1), repealed by Stats. 2010, ch. 711, § 4, now Pen. Code, § 29610, added by Stats. 2010, ch. 711, § 6—count eleven). The court found the minor knew his actions in August 2010 and April 2011 were wrong within the meaning of Penal Code section 26. Following a contested disposition hearing, the court adjudged the minor its ward, committed him to juvenile hall for a period already served, and committed him to the probation department for Level A placement with a maximum confinement term of seven years. The minor was ordered to make restitution to the victims of his conduct.

On appeal, the minor contends (1) count eleven is not supported by sufficient evidence of knowing possession of a concealable firearm, (2) the Penal Code section 26 finding on count eleven is not supported by sufficient evidence he knew his conduct was wrong, and (3) the juvenile court failed to determine whether counts four and eleven were felonies or misdemeanors. We remand for the requisite determination.

## FACTS[1]

### *Count Four—Receiving Stolen Property, April 10, 2011*

The minor and R.B. rode their bicycles to David Reese Elementary School. The two hopped through an open classroom window and began placing electronics into bags. Then they went to another classroom and sprayed a fire extinguisher. The duo also stole sweatshirts from a hallway cabinet and food from a school refrigerator. When finished, they departed through the open window and rode away from the school.

Sacramento County Sheriff's Deputy Brian Prehoda was investigating an armed robbery when he saw the minor and R.B. riding bicycles in the parking lot of David Reese Elementary School. Prehoda followed the boys and activated his overhead lights.

---

[1] Our statement of facts is limited to the counts that are at issue in this appeal.

R.B. stopped his bicycle, while the minor continued riding toward a residence. Prehoda searched R.B.'s bag and found a laptop computer bearing an Elk Grove Unified School District sticker. Prehoda then went toward the residence where he had last seen the minor.

As Deputy Prehoda approached, he saw the minor hiding behind some bushes near the front door of the home. He was taken into custody and placed in the back of a patrol car. Prehoda later found a David Reese Elementary School duffel bag in the yard next to where the minor had been taken into custody.

### *Count Eleven—Possession of a Concealable Firearm, April 21, 2011*

Before leaving his residence, the minor cut off the electronic ankle monitor he was wearing. Then he and S.T. walked to James Rutter Middle School. The minor broke a window and the duo entered the school's snack bar. From there, they knocked a hole in an interior wall and vandalized the student store. The store cash registers were destroyed. The minor took approximately $5 in coins and the duo left the school.

The minor and S.T. left the school and walked along a nearby creek. At some point, the minor found a gun and S.T. took it from him. The gun, a silver revolver, appeared to be old and rusty. S.T. gave the gun back to the minor, who started pulling the trigger. The first two times, S.T. heard only the clicking noise of the trigger. The third time, the gun fired a bullet that struck S.T. in his shoulder. The duo walked toward the minor's residence. On the way there, the minor suggested they fabricate a story about Mexicans shooting S.T. Once at the house, the minor's mother called for medical help.

Sacramento County Sheriff's Deputy Michelle Allen responded to the shooting call and interviewed the minor at his residence. The minor told Allen he and S.T. had been approached by two Mexicans in the parking lot of a restaurant. The four exchanged words, and one of the Mexicans pulled out a handgun and shot S.T.

Sacramento County Sheriff's Deputy Rodolfo Roque interviewed S.T. at the hospital later that day. S.T. claimed he and the minor were walking through an alleyway

behind a market when they encountered two Hispanic males.  S.T. and the minor fled, but the Hispanics gave chase and shot S.T.

The defense rested without presenting evidence or testimony.

## DISCUSSION

## I

The minor contends count eleven (Pen. Code, § 29610) is not supported by sufficient evidence of knowing possession of a concealable firearm.  Specifically, he argues there was insufficient evidence to show that, at age 11, he knew or should have known the firearm was real.  We are not persuaded.

### *Background*

Defense counsel argued "the condition of the gun even suggested the possibility that it may not have even been a real gun to the extent that it was in this dirty, rusty condition laying in the dirt."  Counsel continued, "it doesn't shoot the first two times. Wow, then it discharges, making it obvious that it's a real gun.  And shortly after that, . . . [the minor] voluntarily abandoned the firearm."

The juvenile court responded, "It would seem to me, if someone picked up, whether it was a revolver or a nine-millimeter or some type of gun, generally fairly recognizable as a gun, it would seem to be a firearm . . . even though they might not be aware that it was [inoperable]."

### *Analysis*

"The standard of proof in juvenile proceedings involving criminal acts is the same as the standard in adult criminal trials.  [Citation.]  Thus, the standard of appellate review as delineated in *People* v. *Johnson* (1980) 26 Cal.3d 557, 562, is applicable in considering the sufficiency of the evidence in a juvenile proceeding.  This court must review the whole record in the light most favorable to the judgment below to determine whether it discloses substantial evidence—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt.  We must presume in support of the

4

judgment the existence of every fact the trier of fact could reasonably deduce from the evidence [citation] and we must make all reasonable inferences that support the finding of the juvenile court.  [Citation.]"  (*In re Jose R*. (1982) 137 Cal.App.3d 269, 275 (*Jose R.*).)

"If the circumstances reasonably justify the trier of fact's findings, reversal of the judgment is not warranted simply because the circumstances might also reasonably be reconciled with a contrary finding."  (*People v. Albillar* (2010) 51 Cal.4th 47, 60 (*Albillar*).)

Penal Code section 29610 states in full:  "A minor shall not possess a pistol, revolver, or other firearm capable of being concealed upon the person."  The People acknowledge that, although the statute is silent on the subject, awareness of a prohibited item's character typically is an element of the offense of unlawful possession.  (E.g., *People v. Palaschak* (1995) 9 Cal.4th 1236, 1242 [essential elements of possession of a controlled substance include knowledge of the substance's restricted dangerous drug character]; *People v. Jurado* (1972) 25 Cal.App.3d 1027, 1030-1031 ["Courts have assumed that, under the various statutes making criminal the possession of a weapon, knowledge of the presence and character of the object is an element of the offense."].)  In this case, the record contains sufficient evidence of knowledge.

The evidence showed the minor found a gun along a dry creek, and S.T. took it from him.  After S.T. gave it back, the minor started pulling the gun's trigger.  The minor's repeated pulls on the trigger support a reasonable inference he *intended* to fire the gun, and *expected* the gun to fire, even before it ultimately fired.  The minor could entertain this expectation only if he *believed the gun was real.*  Moreover, the first two times the minor pulled the trigger, the gun emanated a clicking noise, further suggesting the gun was real.  The gun's old and rusty condition suggested it was made of metal, a material that further suggested the gun's authenticity.  The metal gun's weight and feel

5

would have suggested to a user, even one as young as age 11, that the gun was real and not a toy.

The minor claims the "facts completely militate in favor of finding that [he] thought the gun was a toy." This claim disregards the foregoing factors.

In any event, no evidence affirmatively suggested the minor believed the gun was a toy. Even if there were such evidence, the fact "the circumstances might also reasonably be reconciled with" such a belief would not warrant reversal of the judgment. (*Albillar*, *supra*, 51 Cal.4th at p. 60.)

The minor argues "all the evidence produced concerning the shooting came from S.T. and was, therefore, based on his version of the incident. S.T. was shown, as noted by defense counsel and the court, to have made false statements to police and to have lied while under oath. [Citation.] We only have S.T.'s testimony to implicate [the minor] in the shooting."

This argument is addressed to the wrong tribunal. Weighing S.T.'s credibility was the job of the juvenile court, not this court. We presume every fact the trier reasonably could deduce from the evidence, *including evidence supplied by S.T.* (*Jose R.*, *supra*, 137 Cal.App.3d at p. 275.)

The minor acknowledges the juvenile court's finding that he "suggested coming up with a fake story [S.T. was shot by Mexicans] to explain how the shooting took place." The minor appears to claim the fake story is not relevant to his criminal intent *in possessing and attempting to fire the gun* because, even if he reasonably believed the gun was a toy until the moment it fired, the firing gave him sufficient incentive to concoct the same false story.

This claim fails under our standard of review. The juvenile court reasonably deduced the false story was intended to evade responsibility for *both* the possession *and* the ultimate firing. The fact the court *could have* found the story was directed only at the firing does not warrant reversal of the judgment. (*Albillar*, *supra*, 51 Cal.4th at p. 60.)

6

The juvenile court acknowledged the existence of a "transitory possession" defense that applies where a person picks up a firearm and carries it for the sole purpose of disposing of it. (Citing *People v. Mijares* (1971) 6 Cal. 3d 415, 419 and *People v. Paz* (2010) 181 Cal.App.4th 1413, 1417.) The court found the defense inapplicable because the minor's handling and repeated attempts to fire the gun "would be sufficient dominion and control to constitute possession." The minor disagrees, contending there was insufficient evidence he believed the gun was real during the handling and attempted firing. We have already rejected this contention.

Having concluded there was sufficient evidence of the minor's knowledge and intent, we reject the minor's claim the juvenile court's ruling circumvented the element of *mens rea* and converted former Penal Code section 12101 into a strict liability offense.

The minor complains "[t]he prosecution never explained *why* [the minor], if he believed the gun were real, would want to shoot his friend S.T." (Italics added.) The obvious reason for the lack of explanation is the prosecution *never claimed the minor wanted* to shoot S.T. Although there was substantial evidence the minor wanted to fire the gun, there was no suggestion he wanted to fire it *at S.T.* The true finding on count eleven is supported by substantial evidence.

## II

The minor contends the Penal Code section 26 finding on count eleven is not supported by sufficient evidence he knew possessing the gun was wrong. He claims the evidence adduced against him, which supported the juvenile court's finding that he knew the wrongfulness of possessing and firing a gun he had found, "was all based on his conduct *after* the gun discharged." In his view, this evidence cannot "form the basis for [his] knowing his conduct was wrong *before* he committed the alleged offense." We are not persuaded.

7

### *Background*

The juvenile court found the minor knew his actions were wrong. The court stated: "With regard to the firearms charges, there was evidence from [S.T.'s] testimony that [the minor] had suggested coming up with a fake story to explain how the shooting took place. There were statements made by [the minor] to the police which I now find were false statements as to how the shooting took place. Then he used the story about the Mexicans shooting him. [¶] After the shooting, even though they were young at the time, the actions taken by the minor . . . evidence an understanding that his actions were wrong. His friend had been shot. Instead of going to the friend's house, or going to the hospital, or something like that, they went to [the minor's] house. They stayed at [the minor's] house for a period of time. They then told the false story as to how the shooting took place. [¶] All those factors taken together demonstrate that he knew his actions handling the gun were, in fact, wrongful. Accordingly, I find that the evidence proves, with regard to all the counts, that the minor acted with the knowledge that his actions were wrong."

### *Analysis*

Children under age 14 are presumed incapable of committing crimes in the absence of clear proof that at the time of committing the act charged, they knew of its wrongfulness. (Pen. Code, § 26, class One.) In determining whether a minor was aware of the wrongfulness of his actions, the juvenile court must consider the minor's age, experience, and understanding. (*In re Gladys R.* (1970) 1 Cal.3d 855, 864.) Circumstantial evidence based on the method of commission of the crime and concealment after the fact is often used to determine the minor's state of mind. (*In re Tony C.* (1978) 21 Cal.3d 888, 900 (*Tony C.*).) The juvenile court's finding on the issue will be upheld if supported by substantial evidence. (*In re Paul C.* (1990) 221 Cal.App.3d 43, 52.)

8

The minor claims the juvenile court's reasoning does not address the issue of *when* he learned his actions were wrong. Specifically, he claims the only evidence suggesting he had knowledge of wrongfulness "pertains to his conduct *after* the gun fired." But as we have seen, conduct after the fact, such as concealment, often is used to determine a minor's state of mind *at the time of an offense*. (*Tony C.*, *supra*, 21 Cal.3d at p. 900.) In this case, invention of the false story was tantamount to concealment.

In a further challenge to the juvenile court's reasoning, the minor claims it is "quite likely" his residence was closest to where S.T. was shot, making it "the likeliest place to go." In his view, the court's finding that he and S.T., "young boys who don't drive," should have gone to the hospital instead of the minor's residence, is "simply preposterous." We think "preposterous" is better reserved for the minor's implication that the boys, who did not drive, otherwise lacked access to the hospital through means such as telephoning 911 from the minor's residence. The court could consider the boys' failure to go to the hospital as evidence the minor knew his actions were wrong.

In part I, *ante*, we rejected the minor's argument that he "did not think he was dealing with a real firearm." It is not necessary to repeat that discussion here. The juvenile court's finding that "the firearm was . . . not fired intentionally" does not undermine its finding that the minor *knew he was handling a real gun*. Nor does it undermine the further finding that the minor *knew his doing so was wrong*. The Penal Code section 26 finding is supported by substantial evidence.

### III

The minor contends the juvenile court failed to determine whether counts four (receiving stolen property) and eleven (possessing a firearm) were felonies or misdemeanors. The People concede the error but claim it was harmless. We remand for the requisite determination.

Welfare and Institutions Code section 702 states, in relevant part: "If the minor is found to have committed an offense which would in the case of an adult be punishable

9

alternatively as a felony or a misdemeanor, the court shall declare the offense to be a misdemeanor or felony."

This statute imposes a mandatory duty on the juvenile court to make the requisite declaration when disposing of so-called "wobbler" offenses. (*In re Manzy W*. (1997) 14 Cal.4th 1199, 1204 (*Manzy W*.).) But failure to comply with this requirement does not result in automatic reversal. (*Id*. at p. 1209.) If the record in the particular case shows "that the juvenile court, despite its failure to comply with the statute, was aware of, *and exercised* its discretion to determine the felony or misdemeanor nature of a wobbler," remand is not required. (*Ibid*.) "The key issue is whether the record as a whole establishes that the juvenile court was aware of its discretion to treat *the offense* as a misdemeanor and to state a misdemeanor-length confinement limit." (*Ibid*., italics added.)

In this case, the juvenile court calculated the minor's maximum term of confinement in accordance with counts four and eleven being felonies. But the court made no express determination whether the two counts were felonies or misdemeanors.

The People do not point to evidence suggesting the juvenile court *knew* counts four and eleven were wobblers or *knew* it had discretion to state misdemeanor-length confinement limits for those counts. (*Manzy W*., *supra*, 14 Cal.4th at p. 1209.) Instead, the People rely on an exchange between the court and defense counsel at the disposition hearing. Defense counsel noted her previous off-the-record request that the court reduce "certain crimes" to misdemeanors pursuant to Welfare and Institutions Code section 702. The court responded by noting that counsel had indeed made such a motion and that the court had denied it without prejudice at that time. Following that exchange, defense counsel requested that count seven be dismissed in the interest of justice or, alternatively, that count six be reduced to a misdemeanor under Welfare and Institutions Code section 702. In response, the court affirmatively stated it would not reduce the minor's second degree burglary wobbler.

10

The People acknowledge that "none of the above stated record specifically references the offenses listed in counts four and eleven." While the record may show the juvenile court was "fully aware that it had discretion to reduce wobbler offenses," the record does *not* show the court's awareness that this discretion encompassed counts four and eleven. Thus, the record does not address the "key issue" of "whether the record as a whole establishes that the juvenile court was aware of its discretion to treat *the [count four and eleven] offense[s]* as . . . misdemeanor[s] and to state a misdemeanor-length confinement limit." (*Manzy W.*, *supra*, 14 Cal.4th at p. 1209.) On remand, the juvenile court shall make the requisite declaration and, if necessary, recalculate the minor's maximum period of physical confinement. (*Id*. at p. 1211.)

### DISPOSITION

The juvenile court's calculation of the minor's maximum period of confinement is vacated. In all other respects, the judgment is affirmed. On remand, the juvenile court shall determine whether counts four and eleven are felonies or misdemeanors and shall determine the minor's maximum period of confinement.


                                          RAYE            , P. J.


We concur:


       NICHOLSON      , J.


       HULL           , J.


11